Arthur J. Elliott, Appellant *v.* H. B. Alexander & Son, Inc., City of Lebanon, Sencit-Lebanon Company, Appellees.

Argued December 7, 1978, before Judges CRUM-LISH, JR., MENCER and CRAIG, sitting as a panel of three.

*Robert C. Rowe,* with him *Robert Sullivan, Jr.* and *Sullivan and Sullivan,* for appellant.

*Donn L. Snyder,* with him *Berman, Boswell, Snyder & Tintner,* for appellee, H. B. Alexander & Son, Inc.

*James T. Reilly,* with him *Egli, Reilly, Wolfson and Feeman,* for appellee, Sencit-Lebanon Company.

OPINION BY JUDGE MENCER, March 9, 1979:

Arthur J. Elliott has appealed from an order of the Court of Common Pleas of Lebanon County denying his request for an injunction to restrain the City of Lebanon (City), H. B. Alexander & Son, Inc. (Alexander), and the Sencit-Lebanon Company (Sencit-Lebanon) from trespassing on his property.

In 1917, a parcel of land located in what was then the Lebanon Independent Borough was laid out in lots on a plan known as the "Forneydale Plan." Several

streets were designated on this plan, one of which was Decatur Street, the subject of this controversy. Lots were sold with reference to this plan, the lots being described in part by reference to the streets as boundaries.[1] Between 1917 and 1949, some of the streets were paved, opened, and used by the public; many, including Decatur Street, were not.

In November 1949, owners of lots in the Forneydale Plan, including Elliott's predecessor in title, joined in a petition to have the Lebanon Independent Borough annexed to the City of Lebanon. Attached to the petition was a map illustrating the Borough's "boundaries, streets and highways." Decatur Street was shown on this map as an alley running north and south, intersected by two streets and spanning three blocks.

The Borough was annexed to the City on January 1, 1951. Thereafter, some of the streets on the Forneydale Plan were opened and used, including the northern block of Decatur Street. However, the southern two blocks, comprising approximately 300 feet, remained unopened, unpaved, and unused. The southern intersecting street also remained unopened.

In the late 1960's, Elliott acquired title to all of the land abutting on both sides of the unopened portion of Decatur Street. In 1969, Elliott permitted the City, without protest, to install a storm sewer on the extreme southern 50 feet of Decatur Street for the purpose of alleviating drainage problems in the area.

In September 1971, City workers were engaged in repaving the already opened northern block of Decatur Street. At that time, Elliott approached the

---

[1] It is well established that the grantee of lots conveyed in this fashion takes title in fee simple to the center of the street, subject only to the rights, if any, of the purchasers of other lots and the public in general. *See, e.g., Rahn v. Hess,* 378 Pa. 264, 270, 106 A.2d 461, 464 (1954).

worker in charge of the project and requested him to extend the paving 35 feet further south, into the unopened portion between Elliott's land, so that Elliott would have easier access to his garages. The 35 feet were paved as requested, but Elliott was never billed for the work.

Sometime thereafter, Sencit-Lebanon, owner of a tract of land north of Elliott's property which was *not* a part of the Forneydale Plan, contracted with Alexander to build a four-story residential building. The City refused to approve the construction, however, unless a means could be devised to cope with the expected increased water runoff. Alexander's engineers developed a plan to dig a drainage ditch through Elliott's property along the southern two blocks of Decatur Street. However, when Alexander entered on this portion of Decatur Street and began cutting down trees and clearing away brush, Elliott instituted the present action to enjoin the alleged trespass. When the Court of Common Pleas of Lebanon County refused the injunction on the ground that Decatur Street was a public highway, Elliott appealed to this Court.

The major issue in this case is whether or not the southern two blocks of Decatur Street have been "opened to, or used by, the public," within the meaning of Section 1 of the Act of May 9, 1889, P.L. 173, *as amended*, 36 P.S. §1961 (Act of 1889), which provides as follows:

> Any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or

owners of the land on which the same has been, or shall be, laid out.[2]

Where lots are sold with reference to a plot or plan showing streets, an implication arises that the grantor has dedicated the streets to the public. *See, e.g., Bieber v. Zellner,* 421 Pa. 444, 446, 220 A.2d 17, 18 (1966); *Rahn v. Hess, supra* note 1.[3] If the dedication is not accepted by the public, or by the municipality acting on behalf of the public, within 21 years, the Act of 1889 forbids the opening of streets without the permission of the owners of the abutting lots. *Kramer Appeal, supra* note 2, 438 Pa. at 502-03, 266 A.2d at 98; *Rahn v. Hess, supra* note 1. The purpose of the Act is "to relieve land upon which streets have been laid out by the owners, but not used, from the servitude imposed." *Id.* at 269, 106 A.2d at 463. Unopened and unused streets have no existence except on paper and are therefore referred to as "paper streets." *See, e.g., Wynn Appeal,* 188 Pa. Superior Ct. 499, 504, 149 A.2d 149, 152 (1959). The Act of 1889 is actually a statute of limitations applicable to anyone seeking to assert the public character of such

---

[2] Although the Act of 1889 refers only to villages and towns, the Act has been consistently applied to cities as well since the time of its enactment. *See, e.g., Kramer Appeal,* 438 Pa. 498, 266 A.2d 96 (1970); *Philadelphia Electric Co. v. Philadelphia,* 303 Pa. 422, 154 A. 492 (1931); *Woodward v. City of Pittsburg,* 194 Pa. 193, 45 A. 91 (1899); *Quicksall v. City of Philadelphia,* 177 Pa. 301, 35 A. 609 (1896).

[3] Since none of the defendants in this case are owners of other lots in the Forneydale Plan, the only rights they may assert are those of the public in general. *Bieber v. Zellner, supra.* Although the owners of other lots in the Forneydale Plan may have private rights of easement which would not be affected by the Act of 1889, these rights are entirely separate and distinct from those of the public. *See generally Stozenski v. Borough of Forty Fort,* 456 Pa. 5, 317 A.2d 602 (1974); *Bieber v. Zellner, supra; Rahn v. Hess, supra* note 1; *Drusedum v. Guernaccini,* 251 Pa. Superior Ct. 504, 380 A.2d 894 (1977).

streets. *Rahn v. Hess, supra* note 1, 378 Pa. at 269, 106 A.2d at 463.

Where one sets up the existence of a public highway, the burden is upon him to show an acceptance of the dedication by clear and convincing evidence. *Milford Borough v. Burnett,* 288 Pa. 434, 439, 136 A. 669, 671 (1927). The acceptance which will forestall operation of the Act of 1889 may be express or implied. *Tri City Broadcasting Co. v. Howell,* 429 Pa. 424, 426, 240 A.2d 556, 558 (1968). However, formal expressions of acceptance, unaccompanied by actual opening or use, are not ordinarily sufficient. *See Philadelphia Electric Co. v. Philadelphia, supra* note 2, 303 Pa. at 432, 154 A. at 496 (ordinances placing street on city plan and directing it to be opened insufficient); *Wynn Appeal, supra,* 188 Pa. Superior Ct. at 504-05, 149 A.2d at 152 (mere dedication of street, or adoption as such by municipality, is not an acceptance so as to make it a public highway); *Township of Upper Saucon v. Carmelite Sisters,* 28 Leh. L.J.178 (1959). In addition, where an implied acceptance is alleged, "there must be *unequivocal* authoritative acts of the municipality evidencing its intention to accept." *Tri City Broadcasting Co. v. Howell, supra,* 429 Pa. at 426, 240 A.2d at 558 (emphasis added).

> All authorities agree . . . that there must be unequivocal acts, continued *during a long time,* to show *beyond question* the intention on the part of the municipality to accept the proposed street as a public highway. . . . [T]he intent to accept a public highway must clearly appear, and *not be the subject of doubt.* Not only must the acts be continuous . . . and for a long period . . . , but they must be open and notorious. . . . *Mere occasional use, or inconsequential acts for the convenience of the municipality, will not be*

*sufficient to convert a dedication into a public way....* (Citations omitted.) (Emphasis added.)
*Milford Borough v. Burnett, supra,* 288 Pa. at 438-39, 136 A. at 671.

In this case, Decatur Street was originally dedicated in 1917 when it was included on the Forneydale Plan and lots were sold with reference to the plan. There is no evidence that Decatur Street was opened, used, or accepted in any way prior to 1938, and the public's rights in the street expired at that time by virtue of the Act of 1889. In November 1949, however, Elliott's predecessor in title signed the petition for annexation. By allowing Decatur Street to be included on the map attached to this petition, Elliott's predecessor rededicated the street to the public. Thus, the public and the municipality had another 21 years within which to accept the street as a public way, and the specific question before us is whether or not such acceptance has occurred.[4]

Where the facts are undisputed, the question of acceptance is one of law. *Agardy v. Pleasant Hills Borough,* 394 Pa. 350, 352, 147 A.2d 366, 368 (1959); *Easton v. Koch,* 152 Pa. Superior Ct. 327, 336, 31 A. 2d 747, 751 (1943). The City, Alexander, and Sencit-

---

[4] The defendants have correctly pointed out that the Act of 1889 was repealed insofar as it related to boroughs by Chapter XIII, Section 1(c) of The General Borough Act, Act of May 14, 1915, P.L. 312, *as amended* (Act of 1915), repealed by Section 3301 of The General Borough Act, Act of May 4, 1927, P.L. 519, *as amended* (Act of 1927), repealed by Section 3501 of The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended* (Act of 1966), 53 P.S. §48501. The defendants overlook the fact that a provision identical in all material respects was contained in Chapter VI, Art. IV, Section 14 of the Act of 1915 and in Section 1631 of the Act of 1927, and is presently contained in Section 1724 of the Act of 1966, 53 P.S. §46724. Thus, provisions equivalent to the provisions of the Act of 1889 were applicable to boroughs throughout the time period involved in this case.

Lebanon rely on four undisputed facts which, they maintain, establish acceptance as a matter of law: (1) the annexation of the Borough by the City, (2) the opening of other streets in the Forneydale Plan, including the northern block of Decatur Street, (3) the installation of the storm sewer, and (4) the paving of 35 feet near Elliott's garages. These actions, considered individually or collectively, do not manifest an unequivocal intention to accept Decatur Street as a street, and they are insufficient to constitute an "opening" within the meaning of the Act.

With regard to the annexation, "[t]he city took the annexed territory just as it found it. If there were dedicated streets unaccepted in any way, they did not become public thoroughfares merely by being brought within the city limits." *Mayor of Baltimore v. Broumel,* 86 Md. 153, 159, 37 A. 648, 650 (1897). Moreover, the annexation was, at best, a formal act which, unaccompanied by further action, is not sufficient to forestall operation of the Act of 1889. *See Philadelphia Electric Co. v. Philadelphia, supra* note 2.

It is true that some courts in other jurisdictions have held that acceptance of some of the streets in a plat or map is an acceptance of all such streets and that the acceptance of part of the length of a street is an acceptance of the entire street. *See generally* Annot., 32 A.L.R. 2d 953 (1953). The rule in Pennsylvania is to the contrary, however, and acceptance of a part of property dedicated to the public will not constitute an acceptance of the entire dedication. *Milford Borough v. Burnett, supra,* 288 Pa. at 441, 136 A. at 672; *Commonwealth v. Royce,* 152 Pa. 88, 25 A. 162 (1892); *Vendetti Appeal,* 181 Pa. Superior Ct. 214, 124 A.2d 448 (1956) (allocatur denied); *Mynyk's Appeal,* 175 Pa. Superior Ct. 339, 104 A.2d 173 (1954); *Oakley v. Luzerne Borough,* 25 Pa. Superior Ct. 425 (1904).

The 35 feet of the street near Elliott's garage was not paved until 1971, after the 21-year period had expired, and therefore cannot operate as an acceptance. *See Oakley v. Luzerne Borough, supra.* In fact, the only act done by the City with reference to the portion of Decatur Street in dispute within the statutory period was the installation of the storm sewer on the southern 50 feet. This was an isolated act done solely "for the convenience of the municipality," *Milford Borough v. Burnett, supra,* 288 Pa. at 439, 136 A. at 671, it involved only one-sixth of the length of the portion of the street in dispute, and it does not clearly and unequivocally manifest an intention to accept the *entire* street *as a public thoroughfare. See Tri City Broadcasting Co. v. Howell, supra* (construction of sewer line on unopened 20-foot way did not manifest intention to accept dedication for purpose of public thoroughfare).

Finally, except for the storm sewer and the 35 feet of pavement, as far as the record discloses, no one but Elliott and his predecessors have ever set foot on the 300 feet of Decatur Street involved in this case. In fact, that portion of the street has become overgrown with trees and brush. Thus, the street has always been and remains to this day a "paper street" of precisely the kind to which the Act of 1889 was meant to apply.

Sencit-Lebanon and Alexander also argue that Elliott is estopped to deny the public character of the street by reason of his request to have the 35 feet near his garages paved by the City. We must reject this argument as well. First, the estoppel, if any, would run only in favor of the City as the party which expended the funds to pave the 35 feet. Moreover, the facts concerning the dedication of Decatur Street and the acts done by the City with respect to the street were known to the City as well as to Elli-

ott. There is no indication that, at the time he made the request, Elliott was aware that the City's right to accept the street had expired by operation of law. The legal status of Decatur Street was as well known by, or accessible to, the City at the time as it was to Elliott. It is well established that estoppel is based upon misrepresentation and cannot be claimed where, as here, both parties had equal knowledge of the facts. *See, e.g., Culbertson v. Cook,* 308 Pa. 557, 565, 162 A. 803, 806 (1932). The only matter which perhaps was unknown to the City was a matter of law, "yet we must assume the law to have been known to all, and a mistake of that kind will not help either side." *Mott v. Kaldes,* 288 Pa. 264, 276, 135 A. 764, 768 (1927); *see also Ham v. Gouge,* 214 Pa. Superior Ct. 423, 257 A.2d 650 (1969).

Finally, Sencit-Lebanon's argument that, as the owner of the higher property, it has a "prescriptive right" to allow its water runoff over Elliott's land may be true, *see generally* R. Weston, *Gone With the Water-Drainage Rights and Storm Water Management in Pennsylvania,* 22 Vill. L. Rev. 901 (1977), but it is also irrelevant. The right is one " 'of flowage only, in the natural ways and natural quantities'." *McCormick Coal Co. v. Schubert,* 379 Pa. 309, 311, 108 A.2d 723, 724 (1954). The owner of higher land cannot divert surface waters from their natural flow by artificial means, *id.,* and he certainly has no right to trespass upon another's land, cut down trees, and dig a 12-foot wide ditch, as Sencit-Lebanon proposes to do in this case.

Order reversed and case remanded for entry of a decree consistent with this opinion.

ORDER

AND Now, this 9th day of March, 1979, the order of the Court of Common Pleas of Lebanon County,

194

dated August 9, 1977, dismissing Arthur J. Elliott's exceptions to the decree nisi, is hereby reversed; the decree nisi entered by the chancellor on April 13, 1977, dismissing Arthur J. Elliott's complaint, is hereby vacated; and this case is hereby remanded to the Court of Common Pleas of Lebanon County for entry of a decree consistent with this opinion.