597 A.2d 248

NATIONAL CHRISTIAN CONFERENCE CENTER, Appellant,

v.

SCHUYLKILL TOWNSHIP and Elias and Olga Karkalas, Appellees.

The MEANING OF LIFE CENTER, A Pennsylvania Non-profit Corporation d/b/a National Christian Conference Center, Appellant,

v.

SCHUYLKILL TOWNSHIP and Elias and Olga Karkalas, Appellees.

Commonwealth Court of Pennsylvania.

Argued June 10, 1991.

Decided Sept. 5, 1991.

Reargument Denied Oct. 22, 1991.

James T. Owens, for appellants.

Alan M. Kaplan and Howard Gershman, for appellees.

Before PALLADINO and McGINLEY, JJ., and BARRY, Senior Judge.

BARRY, Senior Judge.

The Meaning of Life Center, a not-for-profit corporation operating under the fictitious name National Christian Conference Center (the Center), appeals from an order of the Court of Common Pleas of Chester County which sustained the preliminary objections of Schuylkill Township (the Township) and Elias and Olga Karkalas (the Karkalas) and dismissed the Center's action to quiet title. The Center appeals also from an order of the same court sustaining defendants' preliminary objections and dismissing the Center's complaint for equitable relief against the same parties.

In April of 1963, the Schuylkill Township Board of Supervisors approved a subdivision plan for a residential development known as Powderhorn Knoll to be created on a parcel of land owned by Estelle Young and/or Old Oaks, Inc. The plan included a street designated as Flintlock Lane which terminates in a cul-de-sac. The cul-de-sac has an offshoot known as the "stem" area which is the subject of this dispute. The "stem" area abuts the property of H. Dickson and Adele Corbett, Philip and Mary DeMartino and the Karkalas. The Center owns the land to the rear of the "stem". While the "stem" is not the Center's only ingress and egress to its land it does provide its only access to Flintlock Lane. A plan of the property is attached hereto and marked Exhibit "A". The Karkalas have continuously thwarted the Center's attempts to use this area since 1984 when the Center acquired its property.

On October 7, 1987, upon the petition of the Karkalas, Dickson and Corbett, the Township enacted an ordinance vacating the "stem" area, then rescinded the ordinance in 1988 when it learned that the Center, an abutting landowner, did not join in the petition.

The Center filed an action to quiet title in the Court of Common Pleas of Chester County against the Karkalas and the Township. The court sustained defendants' preliminary objections in the nature of a demurrer because the Center failed to state facts legally sufficient to establish a right of access to the "stem" area. The Center, then filed a complaint for equitable relief against the above named parties. The court sustained the defendants' preliminary objections for the reason stated above. The court added that it must determine who holds title to the "stem" before reaching the issue of the Center's right of access and that equity cannot be invoked when the core of the controversy is legal title to land. The Center filed the present appeals.

The purpose of an action to quiet title is to resolve a conflict over an interest in property. Pa.R.C.P. No. 1061, 42 Pa.C.S.A. The Center does not claim a right (by lien, discharge of an obligation or deed) to possession of the

"stem". It claims a non-possessory interest in the "stem" by way of an easement granted in its favor over the property. The courts have held that an easement is an interest in land for which an action to quiet title may be brought. *Versailles Township Authority v. City of McKeesport,* 171 Pa.Superior Ct. 377, 90 A.2d 581 (1952). An easement may be created 1) expressly; 2) by necessity; 3) by implication; or 4) by prescription. The Center offers no evidence of a deed or any other document from Estelle Young and/or Old Oaks, Inc. expressly granting an easement to it. The Center also does not contend that it has an easement by prescription, which requires open, notorious use of the property for twenty-one years. Furthermore, the Center does not have an easement by necessity because it has access to a public road without the use of the "stem". An easement by implication arises if that was the intent of the parties to the transaction as shown by the terms of the grant and surrounding circumstances. *Nord v. Devault Contracting Co., Inc.,* 460 Pa. 647, 334 A.2d 276 (1975). The Center cannot claim an easement by implication where neither it nor its predecessor in interest were parties to the creation of the subdivision nor purchasers of lots in Powderhorn Knoll.

■ The Center does not have an interest to support an action to quiet title because it has no possessory rights in the "stem" and no easement to use it. The trial court properly sustained the defendants' preliminary objections to the Center's quiet title action.

■ Since the Center is not an owner of a lot in the Powderhorn Knoll subdivision, the only rights it may assert are those of the public in general.[1] Accordingly, the Center argues that the "stem" is a public street. A street becomes public when it is 1) dedicated to public use and 2) accepted by the municipality. Where lots are sold as part of a

---

1. Owners of property within the plan retain private rights of easement by implication over dedicated streets which the municipality fails to accept or open within twenty-one years. *Estojak v. Mazsa,* 522 Pa. 353, 562 A.2d 271 (1989).

subdivision plan submitted to a governing body, the implication arises that the streets are dedicated to public use. *Elliott v. H.B. Alexander & Son, Inc.,* 41 Pa.Commonwealth Ct. 184, 399 A.2d 1130 (1979); *Bieber v. Zellner,* 421 Pa. 444, 446, 220 A.2d 17, 18 (1966). The Center bears the burden of establishing by clear and convincing evidence that the township accepted the dedication. *Elliott v. H.B. Alexander & Son, Inc.,* 41 Pa.Commonwealth Ct. 184, 186, 399 A.2d 1130, 1133 (1979); *Milford Borough v. Burnett,* 288 Pa. 434, 136 A. 669 (1927). Furthermore, streets which are dedicated must be opened to or used by the public within twenty-one years as governed by section 1961 of the Act of 1889 which provides:

> Any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on any lands owned by such person or persons in case the same has not been opened to or used by the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been or shall be laid out.[2]

 The Center does not allege that the township formally and expressly accepted the area but, argues that acceptance was implied because the Township had repealed an ordinance which vacated any interest the township had in the "stem" area. Where an implied acceptance is alleged, the courts have consistently held that there must be unequivocal acts, continued over a long time to show beyond question the intention on the part of the municipality to accept the proposed street. "Mere occasional acts for the convenience of the municipality, will not be sufficient to convert a dedication into a public way." *Milford,* 288 Pa. 434, 438–39, 136 A. 669, 671. The act of repealing an ordinance does not rise to the level of affirmative, unequivocal acts required to act as an implied acceptance.

2. Section 1 of Act of May 9, 1889, P.L. 173, *as amended,* 36 P.S. § 1961.

Flintlock Lane was originally dedicated in 1963 as part of the Powderhorn Knoll subdivision. Assuming a scenario most favorable to the Center, if the "stem" was a part of Flintlock Lane, it was therefore dedicated in 1963. If the Township intended to accept the "stem" for public use it was required to do so before 1984. There is no indication that the "stem" was opened, used, or accepted in any way by the Township before 1984. The only members of the public who attempted to use the stem were the Center's invitees and that was after 1984 and without the consent of the property owners (Karkalas). Even if the repeal of an ordinance could operate as acceptance, it occurred in 1988, after the twenty-one year limit for acceptance. If the "stem" was ever capable of being public it ceased to be so in 1984 when the time passed for acceptance.

The Center's reliance on *McCargo v. Evanson*, 188 Pa.Superior Ct. 465, 149 A.2d 588 (1959), is misplaced. The case upholds an adjoining landowner's right to use an area of publicly dedicated street; *McCargo* however involved a strip of land which was within the dedicated boundary of the street but was not part of the actually used roadway. The "stem" area in the instant dispute forms no part of the dedicated boundary of Flintlock Lane. In addition, in *McCargo* the city formally accepted the dedication of the roadway as shown on the plan and thus that case was based on a different set of facts than the case at bar.

The trial court granted the defendants' preliminary objection on the basis that the Center was unable to prove facts legally sufficient to establish a right of access to the "stem" and to injunctive relief. We agree.

We affirm the order of the trial court dismissing the Center's action to quiet title and complaint for equitable relief.

## ORDER

AND NOW this 5th day of September, 1991, the order of the Court of Common Pleas Chester County, No. 90–00046,

dated May 24, 1990 dismissing the National Christian Conference Center's action to quiet title is affirmed.

## ORDER

AND NOW, this 5th day of September, 1991, the order of the Court of Common Pleas of Chester County, No. 90–04600, dated October 2, 1990 dismissing the Meaning of Life Center's complaint for equitable relief is affirmed.