597 A.2d 1258

Kevin P. TOBIN

v.

RADNOR TOWNSHIP BOARD OF COMMISSIONERS
and Caroline C. Johnson and Alan B. Sheltzer and
Peter A. Benoliel and Felicity R. Benoliel.

Appeal of RADNOR TOWNSHIP BOARD
OF COMMISSIONERS, Appellant.

Kevin P. TOBIN

v.

RADNOR TOWNSHIP BOARD OF COMMISSIONERS
and Caroline C. Johnson and Alan B. Sheltzer and
Peter A. Benoliel and Felicity R. Benoliel.

Appeal of Peter A. BENOLIEL and
Felicity R. Benoliel, Appellants.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1990.

Decided Sept. 30, 1991.

568

570

Eugene H. Evans, for appellant, Radnor Tp. Bd. of Supervisors.

Jenny P. Shulbank, for appellants, Peter A. and Felicity R. Benoliel.

John A. Jaros, for appellee, Kevin P. Tobin.

Before SMITH and BYER, JJ., and BARRY, Senior Judge.

BYER, Judge.

This case presents the question: "What is a street?". More specifically, the issue is whether Cornwall Lane in Radnor Township, an unimproved and unopened "paper street," [1] is a street for purposes of Radnor's subdivision ordinance, ordinance no. 120–43E, which provides "each lot shall have at least twenty (20) feet of frontage on a street...." We hold that Cornwall Lane is not a "street" within the meaning of this ordinance.

## I. BACKGROUND

Appellants are the Radnor Township Board of Commissioners and Peter A. and Felicity R. Benoliel, owners of property abutting Cornwall Lane. The board denied a subdivision application filed by developer Kevin P. Tobin who appealed that decision to the Court of Common Pleas of Delaware County. The Benoliels, along with Caroline C. Johnson and Alan B. Sheltzer, who also owned property abutting Cornwall Lane, intervened. The trial court reversed the board and directed it to approve Tobin's subdivision application. The board and the Benoliels then appealed to this court.

---

1. A "paper street" refers to a street which appears on the plan or zoning map of a municipality or on other publicly recorded documents such as subdivision plans and tax maps. Where such a street has never been opened by the municipality or used by the public, it has no existence except on paper, and is therefore referred to as a "paper street." *See, e.g., Elliott v. H.B. Alexander & Son, Inc.,* 41 Pa.Commonwealth Ct. 184, 188, 399 A.2d 1130, 1133 (1979); *Petition of Wynn,* 188 Pa.Superior Ct. 499, 504, 149 A.2d 149, 152 (1959).

The facts are not in dispute. In 1987, Tobin was equitable owner of a three-acre parcel of land in Radnor known as the "Sommer Tract". The following illustration is a portion of the Delaware County tax assessment map showing Tobin's property, approximately as it appears in a subdivision application (No. 87–S–7) that had been approved by the board prior to the subdivision at issue in this appeal:

As shown in the above illustration, this tract is bordered on the north and east by Cornwall Lane and by Ithan Avenue on the south, according to recorded subdivision plans, Delaware County tax assessment maps and Radnor's zoning map. At the points at which they abut the Sommer Tract, Cornwall Lane and Ithan Avenue are overgrown, undeveloped and unpaved.

Tobin filed an application with the board seeking approval to subdivide this tract into four lots all having access to Ithan Avenue, which was to be paved and improved. The board granted this application (No. 87–S–7) on January 25, 1988, subject to certain conditions to which Tobin agreed (453a, 29a). Access to Ithan Avenue from lot 4 was by a "finger" driveway which extended some 314 feet between lots 1 and 3.

Tobin filed a new subdivision application (No. 88–S–2) seeking to relocate the driveway providing access to lot 3. Tobin had conveyed lot 1 back to the prior owners, the Sommers, and proposed to subdivide the remaining property into three lots. This plan was essentially the same as the previously approved plan, except for renumbering the lots (lots 2, 3 and 4 were renumbered, respectively, as lots 1, 2 and 3) and providing access to new lot 3 by way of Cornwall Lane instead of extending the "finger" driveway onto Ithan Avenue. This new plan did not propose paving or otherwise improving Cornwall Lane except Tobin would construct a driveway west from lot 3 to the paved portion of Cornwall Lane.

Since 1905, the deeds in the chain of title to the Sommer Tract have contained a use clause providing: "TOGETHER with the free use, right, liberty and privilege of the said [Cornwall Lane, formerly] Montgomery Avenue and Ithan Avenue at all times hereafter, forever." (326a). The chain of title to the Benoliel property, located to the west of the Sommer Tract, also contained a similar use clause (172a).[2]

Cornwall Lane is shown as a forty-foot right-of-way on Tobin's subdivision plan, and also on prior subdivision plans recorded in Delaware County in 1957 by Edwin Deegan (336a) and in 1971 by Dolph Zink (338a).

2. The record does not disclose whether the property jointly owned by Ms. Johnson and Mr. Sheltzer to the north of lot 3 of the Sommer Tract was the beneficiary of a similar use clause. However, Tobin's brief suggests that all property owners abutting Cornwall Lane in this area had similar use clauses in their deeds. Brief for appellee, 9–11.

There is no question that Cornwall Lane was at least a paper street, *see* note 1, nor any doubt that Cornwall Lane never had been opened, improved, paved, or used by the public for motor vehicle access. However, a private driveway had been constructed from the paved portion of Cornwall Lane to the Johnson–Sheltzer property to provide its owners with access to a public road.

On December 30, 1960, Edwin and Elizabeth Deegan recorded a deed of dedication, granting the following to Radnor:

> [T]he free and uninterrupted right, use and privilege of constructing and maintaining a roadway or passage way for public travel, together with the right of using or maintaining or permitting the use or maintenance along and under the same for other public services of any nature in, over and along a certain strip of land of the width of thirty (30) feet north of and adjacent to the center line of Cornwall Lane as extended and described below.
>
> * * * * * *
>
> TO HAVE AND TO HOLD ... in connection therewith for public highway purposes.

On April 28, 1975, the board passed a resolution accepting Deegan's dedication of thirty feet of land on the north side of Cornwall Lane (351a). Radnor proposed by this resolution "to construct an extension to its sanitary sewer system" to connect with the sewer line in a portion of Glenmary Lane, an intersecting street, and specifically accepted the dedication for that purpose. The sewer line was constructed, and on December 11, 1978, the board passed another resolution which purported to vacate the "street right-of-way of an unimproved section of Cornwall Lane" that the township had accepted in 1975.

The board denied Tobin's new subdivision application on September 26, 1988, stating seven reasons for its denial,

only one of which now concerns us.[3] Because the board did not consider Cornwall Lane a street, it determined that lot 3 did not have the requisite twenty (20) feet of frontage on a street. On Tobin's appeal, the trial court held an evidentiary hearing on March 14, 1989, and the judge later viewed the proposed subdivision.

The trial court held that Cornwall Lane was a "street" within the meaning of ordinance 120–43E and that lot 3 had the necessary twenty feet of street frontage, and ordered that the subdivision application be approved. The court found it "apparent" that "Cornwall Lane was intended to be developed into a street for vehicular access. It exists of record and certainly can be cleared, paved, and meet the definition of street contained in the township ordinances." *Tobin v. Radnor Township Board of Commissioners,* No. C.A. 88–134600, slip op. at 4. Even though Cornwall Lane was unpaved and unimproved where it bordered lot 3, the court held it was a "street" as defined in ordinance 120–6(C) which defines "street" as: "A public or private thoroughfare used, or intended to be used, for passage or travel by motor vehicles." *Id.* The court also found that Cornwall Lane was actually used for motor vehicle traffic because Ms. Johnson and Mr. Sheltzer used the driveway located in the roadbed of Cornwall Lane to gain access to their property. *Id.* at 6.

The court rejected the board's argument that Cornwall Lane could not be a street because it was at most forty-feet

3. Under section 508 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10508(2), a municipality is required to cite specific provisions of a statute or ordinance that the municipality relies upon, and failure to comply with that requirement will result in the application being deemed approved. *Coretsky v. Board of Commissioners,* 520 Pa. 513, 517–18, 555 A.2d 72, 74 (1989). The board's resolution No. 88–22 (323a) which denied Tobin's application specified several alleged defects without reference to a specific provision of its Subdivision and Land Development Ordinance (Chapter 120 of Radnor's Zoning Code) or a statute, and therefore, the denial cannot be justified by those stated reasons. The remaining reasons given by the board for its denial of Tobin's plan have since been abandoned.

wide [4] and the minimum width of a private or a public street in a subdivision in Radnor must be sixty feet. Ordinances 120–29 and 120–31(d). The court stated that the 1983 ordinances requiring the street to be sixty feet wide could not be applied to Cornwall Lane because it had been publicly dedicated to Radnor, which had not properly vacated the street in accordance with "53 P.S. sec. 1941, et. seq. This statute was not complied with." [5] *Id.* at 5. The court held that a 1983 ordinance [6] "cannot be applied to streets already dedicated." *Id.* Additionally, the sixty-foot minimum width requirement could not be applied to modify the definition of street set forth in definitional ordinance 120–6(C) because "the definition of street for the purpose of the subdivision ordinance cannot be further restricted by regulations contained in some other ordinance and not referenced in the subdivision ordinance. To do so would deny the plain meaning of the words of the subdivision ordinance." *Id.* at 6.

## II. STANDARDS OF REVIEW AND OF ORDINANCE CONSTRUCTION

■ In a zoning case, where additional evidence is taken and the trial court decides the matter *de novo*, our review is limited to a determination of whether the court committed an error of law or an abuse of discretion. *East Marlbor-*

4. There was some dispute as to the exact width and location of Cornwall Lane. The subdivision maps that had been recorded in Delaware County indicated that Cornwall Lane was forty feet, but there was other evidence of record that it was only thirty-feet wide. There was substantial evidence of record that a reasonable mind could accept as adequate to support the court's finding that the paper street known as Cornwall Lane was a forty-foot wide paper street. *Manor Healthcare Corp. v. Lower Moreland Township,* 139 Pa. Commonwealth Ct. 206, 217, 590 A.2d 65, 70 (1991).

5. Section 1 of the Act of May 23, 1907, P.L. 223, 53 P.S. § 1941 ("copy of ordinance to be filed; manner of indexing title"), provides that a municipality may vacate a street by ordinance only.

6. Chapter 120 of Radnor's Zoning Code, its Subdivision and Land Development Ordinance, ordinances 120–1–120–91, was enacted on June 13, 1983. Ordinance 120–43E was amended on October 11, 1983 to require twenty feet of street frontage on each lot.

*ough Township v. Jensen,* 139 Pa.Commonwealth Ct. 297, 300, 590 A.2d 1321, 1323 (1991).

■ The Pennsylvania Municipalities Planning Code[7] (MPC) unquestionably authorizes a municipality to adopt ordinances conditioning subdivision approval upon compliance with specific requirements regarding the location, width and grade of roads within and bordering a development. 53 P.S. § 10503(2)(ii); *Valley Run, Inc. v. Board of Commissioners,* 21 Pa. Commonwealth Ct. 649, 653, 347 A.2d 517, 520 (1975).

■ Subdivisions which do not comply with valid zoning regulations of a municipality cannot be approved. *Wiggs v. Northampton County Hanover Township Board of Supervisors,* 65 Pa.Commonwealth Ct. 112, 118 n. 5, 441 A.2d 1361, 1364 n. 5 (1981). Conversely, where a subdivision application meets all of the technical requirements of a municipality's subdivision ordinance, it must be approved. *Stoner v. Township of Lower Merion,* 138 Pa.Commonwealth Ct. 257, 263–264, 587 A.2d 879, 883 (1991).

■ Although the Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991, does not apply expressly to zoning and subdivision ordinances, the principles contained in that act are followed in construing a local ordinance. *Patricca v. Zoning Board of Adjustment,* 527 Pa. 267, 274, 590 A.2d 744, 747 (1991); *Council of Middletown Township v. Benham,* 514 Pa. 176, 523 A.2d 311 (1987). Words and phrases of local ordinances shall be construed according to the rules of grammar and according to their common and approved usage. 1 Pa.C.S. § 1903(a); *Patricca,* 527 Pa. at 274, 590 A.2d at 747–48. Zoning ordinances should be construed in a sensible manner. *Council of Middletown Township,* 514 Pa. at 187, 523 A.2d at 317. In interpreting provisions of a zoning ordinance, undefined terms must be given their plain, ordinary meaning, 1 Pa.C.S. § 1903(a), and any doubt must be resolved in favor of the landowner and the least restrictive use of the land. *Appeal of Mt. Laurel Racing*

7. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201.

*Association,* 73 Pa.Commonwealth Ct. 531, 534–35, 458 A.2d 1043, 1044–45 (1983).

 Of primary concern in interpreting a zoning ordinance is the legislative intent of the governing body which enacted the ordinance. *See* 1 Pa.C.S. § 1921(a); *Baker v. Commonwealth,* 135 Pa. Commonwealth Ct. 597, 605 n. 1, 581 A.2d 1019, 1023 n. 1 (1990). The letter of the ordinance is not to be disregarded in the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *Cope v. Zoning Hearing Board,* 134 Pa.Commonwealth Ct. 236, 240, 578 A.2d 1002, 1004 (1990). A particular section of a zoning or subdivision code must "be read as an integral part of the whole and not as a separate portion with an independent meaning." 1 Pa.C.S. § 1921(a); *Allright Auto Parts, Inc. v. Zoning Board of Adjustment,* 107 Pa.Commonwealth Ct. 448, 455, 529 A.2d 546, 549–50 (1987). Finally, in ascertaining the intent of the governing body in enacting an ordinance, it is presumed that the governing body did not intend a result that is absurd or unreasonable. *See* 1 Pa.C.S. § 1922(1); *Rudolph v. Zoning Hearing Board,* 80 Pa.Commonwealth Ct. 28, 34, 470 A.2d 1104, 1107 (1984).

### III. LEGAL STATUS OF CORNWALL LANE— DEDICATION AND ACCEPTANCE

In order to apply these principles of ordinance construction properly to determine whether Cornwall Lane is a street within the meaning of ordinance 120–43E, we must first ascertain its legal status. As noted, Cornwall Lane has been shown on various public documents and in recorded deeds since 1905, but has never been physically opened or improved by Radnor for use as a street where it abuts the Tobin property. In 1960, the Deegans recorded a deed of dedication which granted Radnor the right to use a strip of land thirty feet to the north of and adjacent to the center line of Cornwall Lane to construct and maintain a "roadway or passageway for public travel" or "for any other public services of any nature. . . ."

Dedication of land occurs when an owner of property offers it for public use *and* it is accepted by or on behalf of the public. *In re City of Altoona,* 479 Pa. 252, 258, 388 A.2d 313, 315–16 (1978) (quoting *Horsham Township v. Weiner,* 435 Pa. 35, 41, 255 A.2d 126, 129 (1969)). Any act of the owner which clearly indicates an intention to dedicate is sufficient, and the offer may be express or implied by acts, deeds, plots or plans. *Id.; Borough of Edgeworth v. Lilly,* 129 Pa.Commonwealth Ct. 361, 369, 565 A.2d 852, 855–56 (1989).

An offer of dedication continues until revoked. *Milford Borough v. Burnett,* 288 Pa. 434, 438, 136 A. 669, 672 (1927). However, where a municipality fails to accept or open a street within twenty-one years of the offer, it "shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out." Act of May 9, 1889, P.L. 173, 36 P.S. § 1961; *Estojak v. Mazsa,* 522 Pa. 353, 359, 562 A.2d 271, 274 (1989); *Matter of Gaus,* 132 Pa.Commonwealth Ct. 165, 168, 572 A.2d 246, 247 (1990).

Acceptance by the municipality of an offer of dedication within the twenty-one year period is the critical factor which makes the dedication complete. *Borough of Lehighton v. Katz,* 75 Pa.Commonwealth Ct. 388, 394, 462 A.2d 889, 892 (1983); *Lilly,* 129 Pa.Commonwealth Ct. at 369, 565 A.2d at 855–56. Acceptance may be express or implied and may be by conduct. *Tri City Broadcasting Co. v. Howell,* 429 Pa. 424, 426, 240 A.2d 556, 558 (1968); *Katz,* 75 Pa.Commonwealth Ct. at 392, 462 A.2d at 892. However, even an express dedication of a street and a formal expression of acceptance such as a resolution do not cause the street to become a public thoroughfare, unless accompanied by physical opening or use by the municipality or public. *Id.; Elliott v. H.B. Alexander & Son, Inc.,* 41 Pa.Commonwealth Ct. 184, 189, 399 A.2d 1130, 1133 (1979); *Milford Borough,* 288 Pa. at 438, 136 A. at 671, *quoted in Katz,* 75 Pa.Commonwealth Ct. at 394, 462 A.2d at 892

(emphasis added). To demonstrate an implied acceptance, there must be unequivocal authoritative actions by the municipality demonstrating its intention to accept. *Lilly,* 129 Pa.Commonwealth Ct. at 369–70, 565 A.2d at 856; *Tri City,* 429 Pa. at 426, 240 A.2d at 558.

An offer to dedicate land for public highways must be accepted for the purpose offered for there to be a complete dedication. *In re Keifer,* 430 Pa. 491, 493 n. 1, 243 A.2d 336, 338 n. 1 (1968). A municipality may effectuate a limited or partial acceptance of property offered for dedication which does not constitute acceptance of the entire offer of dedication. *Elliott,* 41 Pa.Commonwealth Ct. at 191, 399 A.2d at 1134.

The burden of proving the existence of a public highway is on one claiming its existence to prove acceptance by the municipality by clear and convincing evidence. *Elliott,* 41 Pa.Commonwealth Ct. at 189, 399 A.2d at 1133 (citing *Milford Borough,* 288 Pa. at 439, 136 A. at 671). Where the facts are undisputed, the question of acceptance is one of law. *Elliott,* 41 Pa.Commonwealth Ct. at 190, 399 A.2d at 1134.

Applying these principles of dedication and acceptance, we hold that Cornwall Lane never has been accepted by Radnor and, therefore, remains a street only on paper. The board's resolution in 1975 accepting the Deegan dedication for the limited purpose of constructing a sewer line in the strip of land thirty feet to the north of the center line is not an unequivocal act of acceptance of the entire offer of dedication of Cornwall Lane for use as a public highway. The board's resolution in 1978 "vacating" the "street right-of-way of an unimproved section of Cornwall Lane" did not unequivocally demonstrate that Radnor had previously accepted the dedication in its entirety, as the trial court erroneously held; the township could not vacate that which it did not have. *Kramer Appeal,* 438 Pa. 498, 503–04, 266 A.2d 96, 97–98 (1970). Although the trial court was correct that a municipality may not vacate a street by

resolution,[8] the board only attempted to vacate the *portion* of the dedication it had accepted, the easement for construction of a sewer line.

██ Nor did the actual construction of the sewer line in Cornwall Lane constitute a complete acceptance, because this conduct coupled with the board's resolutions are not actions which manifest an unequivocal intention to accept a street *for public highway purposes. Elliott; Tri City Broadcasting; Boyer v. Baker,* 196 Pa.Superior Ct. 405, 175 A.2d 143 (1961). The court erred in holding that Cornwall Lane was a "publicly dedicated street" and that the "1983 regulations cannot be applied to streets already dedicated." *Tobin,* slip op. at 5.

### IV. APPLICATION OF PRINCIPLES OF CONSTRUCTION TO ORDINANCE 120–43E

██ Applying the principles of ordinance construction, we also hold that a mere paper street is not a "street" within the meaning of ordinance 120–43E, and that a lot adjacent to such a street does not have the requisite twenty feet of frontage.

The subdivision code of Radnor defines "street" as a "public or private thoroughfare used, or intended to be used for passage or travel by motor vehicles." Ordinance 120–6(C). The code does not define "thoroughfare", so we must construe this term according to its plain meaning and common usage, and in a sensible manner. Thoroughfare has been defined as follows:

(1) a street that goes through from one street to another
(2) an unobstructed way open to the public....

Webster's Third New International Dictionary Unabridged 2380 (1986).

The term means, according to its derivation, a street or passage *through* which one can *fare* (travel); that is, a

---

8. 53 P.S. §§ 1672, 1941; *City of Altoona,* 479 Pa. at 256, 388 A.2d at 317.

street or highway affording an unobstructed exit at each end into another street or public passage. If the passage is closed at one end, admitting no exit there, it is called *"cul de sac."*

Black's Law Dictionary 1327 (5th ed. 1979).

An unpaved, unimproved paper street over which the public cannot travel from one street to another is certainly not a "thoroughfare" within its plain, sensible meaning and its common usage. Moreover, Cornwall Lane is not "used, or intended to be used, for passage or travel by motor vehicles."

From the record, it is clear that the public has never used Cornwall Lane for passage or travel by motor vehicles and that Radnor had no intention of developing that paper street into a thoroughfare for use by motor vehicles (280a, testimony of Radnor's engineer, Duncan Hubley). The record also shows that Tobin had no intention of developing Cornwall Lane to permit through passage or travel by the public from one street to another (113a) and that his subdivision application showed no plans to pave or improve Cornwall Lane except to provide a driveway from lot 3 to the paved portion of Cornwall Lane. (280a).

A "driveway" is "a private road giving access *from a public thoroughfare* to a building or buildings on abutting grounds," Webster's Third New International Dictionary Unabridged 692 (1986) (emphasis added); thus, according to its common and sensible usage, a driveway does not constitute a thoroughfare. *See Strasburg Associates I v. West Bradford Township,* 77 Pa.Commonwealth Ct. 166, 465 A.2d 124 (1983) (a driveway is an accessory use of a lot). It is only a private road *to* a public thoroughfare used for access by the owners of the property serviced by the driveway.[9] Cornwall Lane does not become a thoroughfare

9. "Street" is defined by Black's Law Dictionary 1274 (5th ed. 1979) as: "An urban way or thoroughfare.... It includes all urban ways which can be and are generally used for travel, *but does not* normally *include* service entrances or *driveways* leading off from the street onto adjoining premises." (citation omitted) (emphasis added).

used for passage or travel by motor vehicles simply because the owners of lot 3 will locate their private driveway thereon, or because the Johnson–Sheltzer's had an existing driveway located on Cornwall Lane to provide them ingress to their property and egress to the paved portion of Cornwall Lane.

 Similarly, a mere private right-of-way in Cornwall Lane held by Tobin and other adjacent property owners does not convert the unimproved, unpaved and unopen Cornwall Lane into a street used for passage or travel by a motor vehicle, as Tobin argues vigorously. Brief for appellee at 8–13. The trial court correctly held that the private rights of the adjacent property owners have no application to resolution of the zoning dispute in this case. *See Michener Appeal*, 382 Pa. 401, 115 A.2d 367 (1955); *Loch v. Zoning Hearing Board*, 113 Pa.Commonwealth Ct. 211, 215, 569 A.2d 1035, 1037 (1990); *Gossman v. Lower Chanceford Township*, 62 Pa.Commonwealth Ct. 229, 232 n. 3, 435 A.2d 684, 684 n. 3 (1981).

We hold that the plain meaning and common use of the term "street" in ordinance 120–43E, as defined by the plain meaning and common usage of the terms of ordinance 120–6(c), is not ambiguous, and does not include paper streets. If we perceived some latent ambiguity arising from the application of "street" to a paper street, we nevertheless would not hesitate to affirm the board's reasonable interpretation of its own ordinance and to hold that paper streets are not "streets" in Radnor. That interpretation follows from the township's intention in enacting ordinance 120–43E. The intent of the governing body has been called the "polestar" guiding our construction of ambiguous ordinances. *Baker v. Commonwealth*, 135 Pa.Commonwealth Ct. 597, 605 n. 1, 581 A.2d 1019, 1023 n. 1 (1990); *see* 1 Pa.C.S. § 1921(a).

 The intent of the board in enacting Radnor's subdivision code is plain. The code provides that it is intended to create "conditions favorable to the health, safety, and wel-

fare of the community," and its provisions interpreted to be "minimum requirements for the promotion of" these goals. Ordinances 120–3, 120–5.[10] Ordinance 120–43E was adopted by Radnor to insure that every new subdivision lot in the township would have adequate street frontage to facilitate fire protection and other emergency services. This is undoubtedly a legitimate purpose of a subdivision ordinance, and the MPC explicitly authorizes a municipality to adopt ordinances including provisions for insuring that "(ii) streets in and bordering a subdivision or land development shall be coordinated and be of such widths and grades and in such locations as deemed necessary to accommodate prospective traffic, and facilitate fire protection...." 53 P.S. § 10503(2)(ii). Ordinances setting forth requirements for width, grade and location, including street frontage requirements, are presumptively valid. *County Builders, Inc. v. Lower Providence Township,* 5 Pa.Commonwealth Ct. 1, 287 A.2d 849 (1972).

In *Glennon v. Zoning Hearing Board,* 108 Pa. Commonwealth Ct. 371, 529 A.2d 1171 (1987), we upheld a zoning ordinance requiring that every new building "shall be on a lot adjacent to a public street, or with access to an approved private street ... to provide ... access for ... fire protection." We held in *Glennon* that a fourteen foot, unimproved private road was not an "approved private street," and that the zoning board could require the developer to improve the private road to meet the township's specifications. We said in *Glennon:*

> We agree that the Township, under its police power to protect the health, safety and welfare of its residents, may set standards relating to the layout, design and grade of access streets as a condition of developing land in the Township. Such standards protect the public at large by ensuring that fire, police and emergency vehicles

10. Of course, a subdivision application which meets all of the specific, technical requirements of a subdivision code cannot be denied solely on the basis of general concerns such as "health, safety and welfare." *Anderson v. Board of Supervisors,* 63 Pa.Commonwealth Ct. 335, 437 A.2d 1308 (1981).

have access to new developments when needed and protects the individual purchasers of properties in such developments by ensuring that they have suitable and reliable access routes to and from their property. Section 503(2)(ii) of the Pennsylvania Municipalities Planning Code (MPC) ... requires subdivision and land development ordinances to set standards for streets.

*Id.*, 108 Pa.Commonwealth Ct. at 376, 529 A.2d at 1174. Cf. *Board of Supervisors v. Fiechter*, 129 Pa.Commonwealth Ct. 537, 566 A.2d 370 (1989) (although MPC authorizes adoption of subdivision ordinance provisions to insure that streets within and bordering a subdivision shall have widths, grades and locations to facilitate fire protection, a municipality cannot require a landowner to dedicate land for street widening purposes).

There is no evidence of record that a reasonable person might accept as adequate to support the court's finding that Cornwall Lane "was intended to be developed into a street for vehicular access" merely because it existed on paper and *could* be "cleared, paved and meet" the definition of "street" in Radnor's ordinances, and the court abused its discretion in so finding. *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983) (there is abuse of discretion where findings are not supported by competent evidence). The board properly denied Tobin's subdivision application and the court erred in reversing the board and ordering it to approve the application.[11]

The board also argues that Radnor's ordinances regarding minimum width, cul-de-sacs where a street is to dead-end, grading and other technical requirements have

11. Tobin is not deprived of his intended use of lot 3 by our decision. Tobin may develop the Sommers Tract in accordance with his earlier approved subdivision plan, and is not precluded from submitting a new plan that would improve Cornwall Lane to meet Radnor's specifications or from requesting an exception. It is apparent that the board waived certain of its width and other technical requirements in approving Tobin's application providing access from lot 4 to Ithan Road which is also only forty-feet wide. (273a). Presumably, this waiver was granted pursuant to ordinance 120–11 of the subdivision code which allows "reasonable exceptions" to be made.

not been met by Tobin and that his failure to develop Cornwall Lane to meet these technical specifications means it is not a "street" as defined in Radnor's subdivision ordinances. A municipality has a right to insist on reasonable requirements for width, location, design and grading of roads within and bordering its borders. 53 P.S. § 10503(2)(ii); *Glennon; County Builders, Inc.* A court must construe an individual ordinance in the context of the subdivision or zoning code as a whole, *Allright Auto Parts, Inc.*, and the relevant provisions of Chapter 120 of Radnor's zoning code concerning street design, dimensions, and classification of streets in subdivisions are properly considered in construing "street" as used in ordinance 120–43E and defined in ordinance 120–6(C).[12]

For the foregoing reasons, we reverse the order of the Court of Common Pleas of Delaware County, and we reinstate the decision of the Radnor Township Board of Commissioners denying Tobin's subdivision application.

## ORDER

We reverse the order of the Court of Common Pleas of Delaware County and reinstate the decision of the Radnor Township Board of Commissioners.

---

**12.** Even if thirty feet to the north of the center line of Cornwall Lane had been accepted completely by Radnor for use as a public street, Tobin still would not have twenty feet of *frontage on a street.* Tobin does not claim to hold title to the Sommer Tract to the center of Cornwall Lane, but only claims an easement or right-of-way over Cornwall Lane to use for ingress and egress. Brief for appellee, 8–13. Tobin's property to the south of the boundary of Cornwall Lane does not "front" on a street. *See Patricca v. Zoning Board of Adjustment,* 527 Pa. 267, 276 n. 4, 590 A.2d 744, 748 n. 4 (1991) (property which abuts a right-of-way on adjacent property which itself abuts a street does not "front" on that street merely because of the right-of-way to *use* the adjacent property that is actually bounded by the street).