**GRAMLAND PROPERTIES, INC.,**

v.

**PENNSYLVANIA LIQUOR CONTROL BOARD, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted Dec. 7, 2001.
Decided Sept. 20, 2002.

Robin Coward, Plymouth Meeting, for appellant.

Holly L. Setzler, West Chester, for appellee.

BEFORE: COLINS, President Judge, LEADBETTER, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge LEADBETTER.

▮ The Pennsylvania Liquor Control Board appeals from an order of the Ches-ter County Court of Common Pleas, which granted Gramland Properties, Inc.'s application for a liquor license extension to a secondary service area. On appeal, the Board challenges the trial court's findings that the proposed secondary service area is more than 300 feet from the adjacent church and is separated from the primary restaurant by a private service driveway, which is not a public thoroughfare. We affirm, but with respect to the proximity to the church, we do so on different grounds.[1]

Gramland d/b/a Ludwig Village Associates, L.P., owns and operates a full service licensed restaurant, Ludwig's Inn and Oyster Bar. Gramland applied to extend its restaurant liquor license to include a secondary service area located in a small market that is adjacent to the restaurant. The market building is one of several buildings comprising a small shopping area built in 1998 by Gramland on five acres behind the restaurant. The proposed secondary service area will consist of a serving room, food and beverage coolers and a service counter for the sale of beer and take-out food from the restaurant. The proposed secondary service area is located 86 feet from the restaurant, and is separated therefrom by a service driveway. Side-walks from the restaurant to and through-out the shopping area provide pedestrian access to the market building. Contiguous with the westerly property line of the shopping area is an old cemetery on prop-erty owned and maintained by St. Andrew's Episcopal Church, which has not asserted an objection to Gramland's application. The secondary service area is 500 feet from the church building and 205 feet from the cemetery. Notably, the restaurant is similarly located 504 feet from the

1. We may affirm on the basis of a legal analysis different from that applied by the trial court. *McAdoo Borough v. Pennsylvania La-bor Relations Bd.,* 506 Pa. 422, 428 n. 5, 485 A.2d 761, 764 n. 5 (1984).

church building and 255 feet from the cemetery.

The Licensing Bureau denied Gramland's application on the grounds that the primary and secondary service areas are separated by a thoroughfare and that the secondary service area is too close to the church property. Thereafter, Gramland appealed to the Board, which assigned a hearing examiner. The hearing examiner recommended granting the application. However, the Board denied the extension to the secondary service area on the ground that the primary and secondary service areas are separate tracts of land with an intervening thoroughfare, which is a condition prohibiting approval under Section 406.1 of the Liquor Code,[2] *as amended,* 47 P.S. § 406.1. The Board also denied licensure of the secondary service area because it is within 300 feet of St. Andrew's Church, which is a condition for which the Board may deny a new or transfer license under Section 404 of the Code, 47 P.S. § 404.[3] Gramland appealed to the trial court, which held a *de novo* hearing.

The trial court found that there is no public thoroughfare between the licensed premises and the proposed secondary service area within the shopping area. The court also concluded that "the proposed secondary service area is not within 300 feet of St. Andrew's Episcopal Church and the Board could not refuse the application contending that the proposed secondary service area was within 300 feet of a restricted institution." The trial court reasoned that the proper reference point for measurement is from the secondary service area to the church building itself, 500 feet away, rather than to the church property line along the cemetery, 205 feet away. Upon this rationale, the trial court reversed the Board and approved the secondary service area. Subsequently, the Board filed the present appeal.

On appeal, the Board asserts that the trial court erred (1) in concluding that no thoroughfare separates the primary from the secondary service areas; and (2) in misapplying the regulation at 40 Pa.Code § 3.32(a)(1)[4] governing the proper reference point for measuring the distance between the church and the secondary service area. Because these issues raise questions of law, our review is plenary.

 The licensure of a secondary service area is governed specifically by Section 406.1 of the Code. Section 406.1 provides in pertinent part:

[T]he board may approve a secondary service area by extending the licensed premises to include one additional permanent structure with dimensions of at least one hundred seventy-five square feet, enclosed on three sides and having adequate seating. Such secondary service area must be located on property

---

2. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101—8–803; 10–1001. Section 406.1 was added by the Act of December 17, 1982, *as amended,* 47 P.S. § 406.1.

3. Section 404 provides in pertinent part: "[I]n the case of ... the transfer of any license to a new location the board may, in its discretion, grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground...." Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 404.

4. The regulation directs, in pertinent part, as follows:

For the purpose of establishing a uniform method of measurement, the following interpretation shall apply:
(1) Church, hospital, charitable institution, school or playground. The building and the adjoining ground used in connection therewith.

...

40 Pa.Code § 3.32(a)(1).

having a minimum area of one (1) acre, and must be on land which is immediate, abutting, adjacent or contiguous to the licensed premises with no intervening public thoroughfare....

47 P.S. § 406.1 As to what constitutes a "thoroughfare," the Code provides no definition. The dictionary defines "thoroughfare" as (1) "a street that goes through from one street to another" and (2) "an unobstructed way open to the public." Webster's Third New International Dictionary Unabridged 2380 (1993). We have further described it as "a street or highway affording an unobstructed exit at each end into another street or public passage." *Tobin v. Radnor Township Bd. of Comm'rs*, 142 Pa.Cmwlth. 567, 597 A.2d 1258, 1266 (1991).

In the present case, neither the sidewalk nor the service driveway qualify as thoroughfares as the term is used in Section 406.1. The sidewalks do not separate the restaurant from the market but rather provide a means of access between the two. The service driveway is never open to public access, is leased to Ludwig's Inn for the exclusive use by service vehicles during the day, is blocked off by employee vehicles after deliveries are complete, and is marked by signs which read "Not a Public Thoroughfare," "No Exit," and "Do Not Enter." Under these circumstances, the trial court properly found that the service driveway is not a thoroughfare that precludes licensure of the secondary service area under Section 406.1.

■ In looking at the distance between the secondary service area and St. Andrews Church, the trial court found that the cemetery adjacent to the church was not part of the church "building and the adjoining ground used in connection therewith," but was, instead, a separate institution with a different purpose. Since a cemetery is not one of the institutions

enumerated in Section 404, it held the Board had no authority to deny the application based upon its proximity to the proposed secondary service area. We do not reach the merits of the allegation that this analysis is erroneous, however, because we do not believe common pleas should have reached the issue.

The statutory requirements for a secondary service area are set forth in Section 406.1. Common pleas also evaluated the requirements of Section 404 [pertaining to new a license or the transfer of an existing license] because "[t]hese two sections must be read *in pari materi.*" *Gramland Properties, Inc. v. Liquor Control Bd.*, (Chester County No. 00 02094, filed March 28, 2001) slip op. at 4, citing *Roberts v. Pennsylvania Liquor Control Board*, 146 Pa.Cmwlth. 64, 604 A.2d 1152 (1992) and *Ulana, Ltd. v. Pennsylvania Liquor Control Board*, 86 Pa.Cmwlth. 345, 484 A.2d 859 (1984). Neither of these cases, however, provides a rationale for re-examining the criteria in Section 404 concerning distance from a restricted institution to decide the present application for a secondary service area.

In *Ulana*, the applicant sought to extend an existing restaurant liquor license to include a newly purchased adjoining building. The application was made, the hearing thereon conducted and the Board's decision was rendered before the enactment, in December of 1982, of Section 406.1 establishing specific criteria for secondary service areas. In its analysis, the trial court turned to three earlier cases in which the court applied Section 404 to requests for extensions of existing licenses. Based on the rationale in these cases, the trial court concluded that, inasmuch as then no specific statutory provision in the Liquor Code governed the extension request, the provisions of Section 404 were broad enough to govern the application.

*Ulana,* 484 A.2d at 862. This rationale in *Ulana* has no relevance in the present case, which is subject to the specific criteria now provided in Section 406.1.

In *Roberts,* the applicant sought a new hotel liquor license for a facility where a public thoroughfare separated the building housing the guest rooms from the building containing the dining room. Under these circumstances, where presumably liquor would be primarily served in the dining room but service would secondarily be available to the guest rooms, the trial court appropriately looked not only to the requirements in Section 404 regarding the grant of a new license, but also to Section 406.1 against licensure of a secondary service area that is separated from the primary licensed facility by a thoroughfare. 604 A.2d at 1154. Underlying this holding is the statutory definition of a hotel,[5] which includes both guest rooms and dining facilities. Thus, if a hotel license had been granted, it would have necessarily applied to both buildings even though they were separated by a public thoroughfare. Since Section 406.1 would preclude an extension of service to an across-the-highway premises, the Board reasoned that one could not avoid the proscription of Section 406.1 by licensing both the primary and secondary service areas in the initial application. The trial court agreed and affirmed the denial of the license.

■ While we agree with the trial court that these provisions must be read in *pari materia,* that does not mean that every application for a secondary service area permits the Board to reassess all the requirements of Section 404 as though the application were for a new license. Where the criteria of Section 404 have already been established to the satisfaction of the Board or the court in connection with the initial application, re-evaluation of the *same circumstances* in connection with a secondary service application is unwarranted. Of course, if the facts relating to the Section 404 requirements are different for the secondary area or if some significant changes have occurred, these may be taken into account. However, where the second application presents nothing new, it is simply arbitrary for the Board to change its mind about Section 404 criteria, which have already been accepted. Here, there is no significant difference between the primary and the secondary service areas as to their distance from St. Andrews Church. Thus, the Section 404 distance criteria cannot provide a rationale justifying the denial of the secondary service area when the primary has been granted.

Accordingly, the order of the court of common pleas is affirmed.

### ORDER

AND NOW, this 20th day of September, 2002, the order of the Chester County Court of Common Pleas in the above captioned matter is AFFIRMED.

■

---

5. Under Section 102 of the Liquor Code, 47 P.S. § 1–102, hotel is defined as follows:
 "Hotel" shall mean any reputable place operated by responsible persons of good reputation where the public may, for a consideration, obtain sleeping accommodations and meals and which, in a city, has at least ten, and in any other place at least six, permanent bedrooms for the use of guests, a public dining room or rooms operated by the same management accommodating at least thirty persons at one time, and a kitchen, apart from the public dining room or rooms, in which food is regularly prepared for the public.