529 A.2d 1171

Sharon Glennon, Appellant *v.* Zoning Hearing Board of Lower Milford Township and Planning Commission of Lower Milford Township and Board of Supervisors of Lower Milford Township, Appellees.

Argued April 23, 1987, before Judges DOYLE and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Donald B. Smith, Jr.,* for appellant.

*Edward H. McGee,* for appellees.

OPINION BY SENIOR JUDGE BARBIERI, August 12, 1987:

Sharon Glennon, Appellant, appeals here an order of the Court of Common Pleas of Lehigh County denying her appeals from orders of the Lower Milford Township Planning Commission (Commission) and the Lower Mil-

ford Township Zoning Hearing Board (Board). The Commission denied her subdivision application and the Board her applications for a building permit and a variance. We shall affirm.

Glennon purchased a 5.42 acre lot in Lower Milford Township, Lehigh County, in 1984. That lot was part of a much larger parcel that was partitioned off in 1977 through a tax sale. The lot is located in an agricultural zone in which single family residences are a permitted use. Access to Glennon's lot is only through Elm Road, an unimproved private road that is fourteen feet wide at its widest point. Elm Road was a public road at one time but was vacated by the Township in 1960 by a duly adopted ordinance. Glennon had applied to the Commission for approval to subdivide her 5.42 acre lot into two building lots. The Commission denied her application. She also applied for a building permit to construct a single family residence on the lot. The zoning officer denied the building permit on the basis that the lot does not front on a public road or an approved private street as required by Section 733.2 of the Lower Milford Township Zoning Ordinance (Ordinance).[1] Elm Road is not considered by the Township to be an "approved private street" within the meaning of Section 733.2 of the Ordinance. Glennon appealed the zoning officer's denial to the Board in which she asserted that Elm Road was an approved road and also pressed an alternative claim that she was entitled to a variance from Section 733.2's requirement on the basis of an undue hardship. The Board denied both applications.

---

[1] Section 733.2 of the Ordinance provides:

733.2 Every building hereafter erected or moved shall be on a lot adjacent to a public street, or with access to an approved private street, and all structures shall be so located on lots as to provide safe and convenient access for servicing, fire protection, and required off-street parking.

Glennon then appealed the decisions of the Commission and the Board to common pleas court. The common pleas court consolidated the appeals and affirmed the decisions of the Commission and the Board. Appeal to this Court followed.

In this appeal, Glennon raises numerous assignments of error on the part of the Commission and Board that we shall consider in turn. We are also cognizant that our scope of review, where the common pleas court did not take any additional evidence, is limited by Section 754(b) of the Local Agency Law, 2 Pa. C. S. §754(b), to determining whether necessary findings made by the Commission or the Board are supported by substantial evidence, an error of law was committed, or whether any constitutional right of Glennon was violated. *Pilot Oil Corporation v. Zoning Hearing Board of West Hanover Township,* 86 Pa. Commonwealth Ct. 23, 483 A.2d 1049 (1984).

Glennon's initial contention is that the Board and Commission erred in finding that Elm Road was not an "approved private street" within the meaning of Section 733.2 of the Ordinance. She bases this argument on the fact that Elm Road was once a public road and was specifically vacated and declared to be a private road. Since Elm Road was once part of the public roadway system of the Township, she argues, it must qualify as an "approved private street" within the meaning of Section 733.2 of the Ordinance since it was since declared a private road by the 1960 Ordinance vacating it as a public road. We find this argument unconvincing.

Section 1101 of the Second Class Township Code (Code), Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §66101, confers upon the Township the power to lay out, open, widen, and vacate roads. A municipality can vacate a road where the purpose for which the land was used as a public highway no longer exists, is useless

or inconvenient, or burdensome to the municipality. *See e.g. In Re City of Altoona*, 479 Pa. 252, 388 A.2d 313 (1978); *Zeni v. Township Supervisors of Springhill Township*, 69 Pa. Commonwealth Ct. 488, 451 A.2d 809 (1982). Under 53 P.S. §66101, such a vacation can only occur by ordinance duly adopted by the township supervisors. *Clifford Township v. Ransom*, 41 Pa. Commonwealth Ct. 211, 398 A.2d 768 (1979). There is no assertion by Glennon that the Township ordinance vacating Elm Road in 1960 was improper or that the Township lacked the necessary grounds to vacate Elm Road as a public road. We further note that Elm Road did not, and does not, meet the requirements for a public road set forth in Section 1103 of the Code, 53 P.S. §66103, requiring public roads to have a minimum width of thirty-three feet. Elm Road would not even meet the requirements of Section 1103 for a public alley, which is required to be between fifteen and thirty-three feet in width. Elm Road is only fourteen feet in width at its widest point. Thus, Elm Road was and remains inadequate as a public road or alley under 53 P.S. §66103 and the fact it was once a public road does not automatically confer upon it "approved" status some two and a half decades later. The Board and Commission did not err when they found that Elm Road was not an "approved private street" within the meaning of Section 733.2 of the Ordinance.

Glennon next argues that the Township cannot require landowners to construct roadways to Township specifications as a precondition to being granted a building permit. In support of this contention, she calls our attention to *Boron Oil Company v. Zoning Board of Adjustment of Hickory Township*, 52 Pa. D. & C. 2d 267 (C.P. Mercer 1971). Our review of *Boron Oil Company* convinces us that her reliance upon it is misplaced. There, the township required the oil company

to donate a forty-two foot right-of-way to the township and to construct thereon at its own expense a twenty-two foot paved cartway as a precondition to being granted a building permit for a gas station. That is certainly not the case here. All that Section 733.2 requires for a building permit is that the property in question front on a public street or on an approved private street. Glennon need not dedicate anything to the Township in order to acquire a building permit for her property. All she need do is to modify Elm Road from the closest public road to her property so that it meets with the approval of the Township. We agree that the Township, under its police power to protect the health, safety and welfare of its residents, may set standards relating to the layout, design and grade of access streets as a condition of developing land in the Township. Such standards protect the public at large by ensuring that fire, police and emergency vehicles have access to new developments when needed and protects the individual purchasers of properties in such developments by ensuring that they have suitable and reliable access routes to and from their property. Section 503(2)(ii) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10503(2)(ii), requires subdivision and land development ordinances to set standards for streets. The pertinent portion of Section 503(2)(ii) provides:

> (2). Provisions for insuring that: . . . (ii) streets in and bordering a subdivision or land development shall be coordinated and be of such widths and grades and in such locations as deemed necessary to accommodate prospective traffic, and facilitate fire protection; . . .

Thus, under Section 503(2)(ii) of the MPC, the Township had the power and duty to set minimum standards for private streets or roads as a precondition to issuing a

building permit and neither the Commission nor the Board erred in requiring Glennon to bring Elm Road up to the Township's standards as a precondition to approving her applications.

As an alternative argument, Glennon argues that the requirement that she construct improvements on Elm Road to gain "approved" status in order to obtain a building permit creates an undue hardship entitling her to a variance from Section 733.2 of the Ordinance. We disagree. We initially note that the hardship required to support an entitlement to a variance cannot be purely economic or financial. *See Sposato v. Board of Adjustment of Radnor Township,* 440 Pa. 107, 270 A.2d 616 (1970); *Pyzdrowski v. Board of Adjustment of City of Pittsburgh,* 437 Pa. 481, 263 A.2d 426 (1970). Here, Glennon argues that if used for residential purposes, her lot would be worth $27,000.00, while if used solely for agricultural purposes, it would be worth only $2,500.00. This Court has held on numerous occasions that the mere fact that a property can be put to more profitable use than that permitted under the zoning ordinance does not entitle the property owner to a variance. *See e.g., Vacca v. Zoning Hearing Board of Borough of Belmount,* 82 Pa. Commonwealth Ct. 192, 475 A.2d 1329 (1984); *Washington Township, Berks County v. Washington Township Zoning Hearing Board,* 27 Pa. Commonwealth Ct. 510, 365 A.2d 691 (1976); *Grace Building Co., Inc. v. Hatfield Township,* 16 Pa. Commonwealth Ct. 530, 329 A.2d 925 (1974). In order to qualify as a sufficient hardship to justify the grant of a variance, the economic hardship must nearly render the subject property practically valueless. *Alfano v. Zoning Hearing Board of Marple Township,* 14 Pa. Commonwealth Ct. 334, 324 A.2d 851 (1974). Here, Glennon's hardship is purely economical and there exists a practical use for the property. While the agricultural use

would not be nearly as profitable as the residential use, we cannot say it would render the property valueless so as to entitle her to the variance she seeks. Additionally, Glennon had the capability to bring herself into compliance with the requirements of the Ordinance simply by making the improvements to Elm Road that the Township requires. If Elm Road, up to her property, was improved to the Township specifications, it could be an "approved private street" and she would be entitled to her building permit.

In view of the above, we must also reject Glennon's contention that her hardship was not self-created. The frontage on public or approved private streets requirement was in place since January 16, 1973, before this particular parcel was allegedly made into a separate lot by tax sale in 1977 and long before Glennon purchased this property in 1984. It was the creation of this particular parcel without frontage on a public or approved private street, not the imposition of the requirement of the Ordinance, that created the hardship about which Glennon now complains. The situation here is similar to that found in *In Re: Appeal of Grace Building Co., Inc.*, 38 Pa. Commonwealth Ct. 178, 392 A.2d 888 (1978), where a property owner originally owned six nonconforming lots which, taken together, would have satisfied the requirements of the applicable zoning ordinance. The owner thereupon sold two of the lots to a neighbor and applied for a variance to construct a dwelling on the remaining lots, which together lacked the minimum lot area. This Court held that a variance was properly denied since the owner had created his own hardship. 38 Pa. Commonwealth Ct. at 182-183, 392 A.2d at 890. *See also Volpe Appeal,* 384 Pa. 374, 121 A.2d 97 (1956). *See generally* Ryan, Pennsylvania Zoning Law and Practice §6.2.11 (1984 Supp.). The finding here that

Glennon's hardship was self-created was, therefore, correct.[2]

Finally, Glennon argues that the Commission's written denial of her subdivision application contains eight reasons while the motion adopted at the Commission's March 5, 1984 meeting enumerates only five. She argues that the additional three reasons contained in the written denial dated March 7, 1984, should be disregarded as in violation of the "Sunshine Law," Act of July 19, 1974, P.L. 486, *repealed by* the Act of July 3, 1986, P.L. 388, *formerly* 65 P.S. §§261-269. Additionally, she contends that the remaining five reasons the Commission provided for denying her subdivision application are vague and contrary to the MPC.

Our review of the record and applicable case law satisfies us that the actions of the Commission did not violate the Sunshine Law. In *Pae v. Hilltown Township Zoning Hearing Board,* 35 Pa. Commonwealth Ct. 229, 385 A.2d 616 (1978), we held that the action of a zoning hearing board in privately executing a written decision denying a variance did not violate Section 2 of the Sunshine Law, *formerly* 65 P.S. §262, since the zoning board had previously voted to deny the application at a public session. A similar set of circumstances occurred

---

[2] From the record, it appears that Glennon's interest in purchasing this parcel was instrumental in the previous owner recording it as a separate parcel. While this parcel was allegedly created by a tax sale, without the approval of the Commission, in 1977, it did not appear on the land records as a separate parcel until 1984 when a deed to Glennon's grantor was recorded shortly before the deed conveying the parcel to her. In view of this, we conclude that Glennon must stand in the shoes of the prior owner insofar as determining the self-inflicted nature of the hardship about which she now complains. *See e.g., Zoning Hearing Board of Upper Chichester Township v. Petrosky,* 26 Pa. Commonwealth Ct. 614, 365 A.2d 184 (1976), *rev'd on other grounds,* 485 Pa. 501, 402 A.2d 1385 (1979).

here. The actual Commission vote on Glennon's subdivision application was taken at the Commission's public meeting on March 5, 1984. The actual written decision of the Commission denying the application was not mailed to Glennon until March 7, 1984. In *Pae,* the only action taken at the public meeting was to deny the landowner's variance application. The final written decision of the zoning board contained specific findings of fact and conclusions of law. In *Pae,* Judge ROGERS noted that the "formal action" required by the Sunshine Law to be taken at a public meeting was the actual vote on a resolution or decision, and not the execution of the written decision. 35 Pa. Commonwealth Ct. at 233, 385 A.2d at 619. As the Commission here acted substantially the same as did the zoning board in *Pae,* no violation of former 65 P.S. §262 occurred.

Finally, our review of the Commission's written decision denying Glennon's subdivision application satisfies us that it is sufficiently specific and in compliance with Section 508(2) of the MPC, 53 P.S. §10508(2), which requires specification of the defects in the denied application, a description of the requirement not met, and a citation to the provision of the statute or ordinance relied upon. The Commission in its written decision of March 7, 1984, made two factual findings pertaining to the status of Elm Road as an unapproved private street and six reasons for the denial of the subdivision application. Each of those six reasons specifies the defect, the requirement not met by the application, and the specific section or sections of the Ordinance or Subdivision Ordinance relied upon by the Commission. We therefore find the Commission's decision to be in compliance with 53 P.S. §10508(2).

In view of the foregoing, we shall affirm the order of the common pleas court that affirmed the decisions of the Commission denying Glennon's subdivision applica-

tion and the decision of the Board denying her application for a building permit and a variance.

ORDER

Now, August 12, 1987, the Order of the Court of Common Pleas of Lehigh County at Docket No. 84-C-1823, dated March 27, 1986, denying the zoning and land use appeals of Sharon Glennon, are hereby affirmed.