## POA COMPANY

### v.

### The FINDLAY TOWNSHIP ZONING HEARING BOARD and Township of Findlay.

**Township of Findlay, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 11, 1996.

Decided June 20, 1996.

Reargument Denied Aug. 23, 1996.

E.J. Strassburger, for Appellant.

Dwight D. Ferguson, for Appellee, POA Company.

Before PELLEGRINI and KELLEY, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI,[1] Judge.

The Township of Findlay (Township) appeals from a decision of the Court of Common Pleas of Allegheny County (trial court) that reversed a decision of the Findlay Township Zoning Hearing Board (Board) denying POA Company's (POA) request for a variance.

POA owned 5.5 acres of land located within the business park district[2] in the Township. Although POA's land abuts State Route 60 (Airport Parkway) along its northerly line, there was no access to the property from the Airport Parkway. Abutting POA's land at its easterly line is land owned by Martin Media (Martin). To the south of POA's and Martin's land, and abutting both properties, is land owned by Park Ridge II Associates (Park Ridge). Aten Road, a public roadway, runs generally in an east-west direction through part of Park Ridge's land and passes within one-hundred feet of the southerly border of Martin's land.

Until March of 1990, POA's land contained various billboards. The Department of Transportation (Department) subsequently condemned approximately two and one-half acres of POA's land that abutted the Airport Parkway. POA's billboards, which were located on the condemned portion of the land, were removed in December, 1990.

On May 19, 1994, POA applied for a variance for the construction of two billboards on the remaining portions of its land. At the hearings, POA adduced the testimony of George Orcutt (Orcutt), its manager of real estate. Orcutt testified that, at the time the property had been acquired by POA's predecessor in interest, Pittsburgh Outdoor Advertising, in 1952, there had been three billboards in the same portion of the property where the current billboards had been located. Orcutt explained that two of the previous billboards were combined into one billboard and then both billboards had been replaced. Orcutt testified that all of the billboards were in approximately the same location on the subject property along the

---

1. This case was reassigned to the authoring judge on May 3, 1996.

2. Under Section 117.315.5.7 of the Township's zoning ordinance, the permitted uses within the business park district are limited to the following: business or professional office, financial institution, laundry and dry cleaning establishment, light mechanical repair and public office.

Airport Parkway that was condemned by the Department. Orcutt further stated that, in order to service the billboards, POA and its predecessor in title had crossed over Martin's land in order to obtain access to Aten Road. To support this testimony, POA adduced an agreement between itself and Martin confirming that POA had a twenty-foot wide easement along the southerly line of Martin's land for access to its property.

The Township then presented the testimony of Sanford O. Gold (Gold), a real estate broker and developer. Gold, testifying as an expert witness, stated that, based upon his surveys, photographs, plans and the zoning ordinance, POA's property was suitable for the development of an office building. Gold also stated that the twenty-foot easement across Martin's land would be sufficient to support the traffic associated with such an office building.[3]

In rebuttal to Gold's testimony, POA contended that the right-of-way across Martin's land did not provide access to Aten Road. Instead, POA argued, it was also required to cross a portion of Park Ridge's land in order to obtain vehicular access to its property. In support of its argument, POA again offered the testimony of Orcutt who stated that access to Aten Road from POA's property required one to cross Park Ridge's property. Orcutt testified that POA's employees had crossed over Park Ridge's property when they were servicing POA's billboards.

To support its claim that it had a prescriptive easement over Park Ridge's property, POA offered into evidence a written agreement executed in preparation for the hearings on its request for a variance. In that agreement, Park Ridge acknowledged that POA had acquired an easement by prescription over its land from Aten Road to the southerly border of Martin's land for the "purpose of erecting, maintaining, repairing, removing, replacing and otherwise caring"

for outdoor advertising devices. The written agreement specified that POA's use of the right-of-way had been limited to no more than three instances per month by a single vehicle for the servicing of the billboards. POA argued before the Board that its prescriptive easement over Park Ridge's property was solely for the purpose of maintaining its signs. As such, its property could not be used as an office building because such a use would require them to overburden that easement.

At the conclusion of the hearings, the Board concluded that POA's property would be suitable for construction of an office building if it had vehicular access. The Board then concluded that POA was or should have been aware of the limited access to the property at the time that it acquired the land, and that any hardship that POA experienced because of its limited access to the land was self-inflicted or was caused by its predecessor in title. After observing that neither POA nor it predecessor ever attempted to acquire land for a street or a public road, the Board denied POA's request for a variance.

POA then appealed to the trial court, which reversed the Board's decision. In so doing, the trial court observed that POA's property lacks vehicular access but for that access permitted under POA's easements with Martin and Park Ridge. The trial court then examined those easements and determined that they only permitted a limited use solely for the purpose of servicing POA's billboards. The trial court concluded that the limited scope of POA's easements could not be expanded to accommodate the traffic associated with an office building. Given these findings, the trial court concluded that POA's lack of access to its property made that property unsuitable for any permitted use under the zoning ordinance and reversed the decision of the Board, thus granting POA a variance to construct the billboards on its property. The Township appeals to this

---

**3.** Gold also testified that there were other uses permitted under the ordinance that were suitable

for POA's property. He did not, however, set forth or describe those uses.

Court.[4]

The Township contends that the trial court erred in determining that POA was entitled to a variance. The Township argues that POA created an artificial hardship by purposely limiting its access to the property. The Township contends that POA approached Park Ridge after it had filed its variance application and requested a written agreement that limited its right-of-way to no more than three vehicles per month. The Township argues that this limitation, in conjunction with the lack of any effort on the part of POA to gain access to its property, renders POA's hardship self-inflicted, thus precluding the award of a variance.

In addition to showing that its land is virtually useless as it is presently zoned, an applicant for a use variance must also show that it did not create the hardship imposed by the zoning ordinance. *Miller v. Zoning Hearing Board of Ross Township*, 167 Pa. Cmwlth. 194, 647 A.2d 966 (1994). In other words, an applicant for a use variance must show that its inability to use its land in a manner consistent with the applicable zoning ordinance did not result from any conduct on its part. *Id.* If the landowner creates the inability to use its land according to the relevant zoning regulations, then a request for a variance must be denied. *Glennon v. Zoning Hearing Board*, 108 Pa.Cmwlth. 371, 529 A.2d 1171 (1987) (holding that, if a landowner creates a lot with no side or front street frontage, then the landowner cannot obtain a variance from the zoning ordinance requiring such frontage).

Under this principle of zoning law, it has been held that, if a landowner subdivides its land and subsequently seeks a variance from the lot size requirements for one of the subdivided parcels, the variance will be denied. *In Re: Grace Building Co. Inc.*, 38 Pa.Cmwlth. 178, 392 A.2d 888 (1978); *Ephross v. Solebury Township Zoning Hearing Board*, 25 Pa.Cmwlth. 140, 359 A.2d 182 (1976). Because the actions of landowner in subdividing its property created its inability to comply with lot size requirements of the zoning ordinance, the landowner's hardship was self-inflicted. *Id.* When a parcel of property can be used in a manner consistent with the applicable zoning regulations, the landowner cannot intentionally divide that property so that it cannot meet the zoning requirements and then seek a variance from those requirements. *Id. See also Jenkintown Towing Service v. Zoning Hearing Board*, 67 Pa.Cmwlth. 183, 446 A.2d 716 (1982) (holding that if a landowner knowingly places obstacles in the way of the natural expansion of a non-conforming use, then a variance to expand that use will be denied).

In the present case, POA's request for a variance was premised in part upon its contention that it had no other viable use of its land under the zoning ordinance. The Township, however, presented sufficient credible evidence to establish that POA's land is suitable for the construction of an office building, a use that would be permitted under the ordinance. To counter this evidence, POA attempted to show that it was experiencing a hardship because it did not have adequate vehicular access to its property to support the traffic that would be associated with an office building. POA offered into evidence a written agreement that was specifically prepared for its application for a variance and memorialized its easement over the Park Ridge property. The agreement limited POA's easement across the Park Ridge property to no more than three vehicles per month and solely for the purpose of maintaining POA's billboards. Prior to the execution of this agreement, however, there were no express limitations on POA's easement across the Park Ridge property, and there-

---

4. Where, as here, no additional evidence was presented before the trial court, our scope of review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law in denying the use variance. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

fore, there would have been no hardship that would have precluded POA from constructing an office building on its property.[5] As such, by entering into an agreement that specifically limited the use of its easement across Park Ridge's property, POA intentionally created the hardship that it now claims prevents it from complying with the zoning ordinance; that self-inflicted hardship cannot now provide a basis for granting a variance.[6] To allow otherwise would permit an owner of any landlocked property to execute an agreement limiting its easements across adjacent properties in order to avoid compliance with a zoning ordinance.[7]

Accordingly, the order of the trial court, reversing the Board's denial of POA's request for a variance, is reversed.

### ORDER

AND NOW, this 20th day of June, 1996, the order of the Court of Common Pleas of Allegheny County at Nos. S.A. 1789–94, S.A. 1869–94, and S.A. 3556–94, dated August 21, 1995, is reversed.

SILVESTRI, Senior Judge, dissenting.

A review of the record demonstrates that the majority opinion and order are predicated upon assumed facts not of record as well as an issue not raised by the Township prior to this appeal. Accordingly, I dissent.

The facts as herein relevant are as follows. POA Company (POA) owned 5.5 acres of land which, along its northerly line, abuts

State Route 60 (Airport Parkway) in the Township of Findlay (Township). There was no access to POA's land from the Airport Parkway. Abutting POA's land at its easterly line is land owned by Martin Media (Martin) (formerly owned by Patrick Realty Corporation). To the south of POA's and Martin's land and abutting both is land owned by Park Ridge II Associates (Park Ridge), (formerly owned by the Regional Industrial Development Corporation) (RIDC). Aten Road, a public roadway, runs generally in an east-west direction through part of Park Ridge's land and passes within one-hundred (100) feet of the southerly boundary of Martin's land.

Located on POA's land were various billboards as a nonconforming use.[1] In March of 1990, the Department of Transportation (Department) condemned approximately two and one-half (2.5) acres of POA's land that abutted the Airport Parkway and upon which billboards were erected, leaving approximately 2.6 acres intact without billboards thereon.

On September 27, 1990, prior to the removal of the billboards,[2] POA filed an application with the Township's Zoning Hearing Board (ZHB) for a zoning variance to place billboards on its remaining 2.6 acres of land. The application was given a docket No. 90–09 by the ZHB and hearings were conducted beginning November 19, 1990. Township appeared in the proceeding in opposition to the granting of the requested variance.

There were seven (7) hearings scheduled on application No. 90–09; evidence was pre-

---

5. The issue of whether the vehicular traffic associated with an office building would overburden POA's actual prescriptive easement across Park Ridge's property is a question of title restriction that cannot properly be addressed in zoning proceedings. See Calvanese v. Zoning Board of Adjustment, 51 Pa.Cmwlth. 152, 414 A.2d 406 (1980).

6. It should also be noted that POA has made no attempt to gain access to its property by having the private road across the Park Ridge property declared a public road under the Private Roads Act. Act of June 13, 1836, P.L. 551, 36 P.S. §§ 2731–2738.

7. Given our reversal of the trial court on this ground, we need not address the Township's other challenges to the trial court's decision.

1. POA's land, at the times of the hearings, was located within a business park district which limits the permitted uses as follows: business or professional office, financial institution, laundry and dry cleaning establishment, light mechanical repair, and public office. See Section 117.315.5.7 of the Township's Zoning Ordinance.

2. The billboards were removed from the condemned portion of POA's land in December of 1990.

sented at only two (2)[3] of the scheduled hearings. George Orcutt (Orcutt) testified for POA at the hearings of November 19, 1990 and January 21, 1991. (R.R. 10a–16a and R.R. 23a–25a.) Township, at the January 21, 1991 hearing, *only* presented Sanford D. Gold (Gold), an expert witness, who testified as to whether the subject property "is conducive for the development of any purpose other than the billboards." (R.R. 26a–30a, 33a.)

On May 19, 1994, POA filed a new application with the ZHB seeking the same variance for the same 2.6 acres of land as that sought at application No. 90–09. (R.R. 54a). The application was given a docket number, No. 94–02.

There were four (4) hearings scheduled on application No. 94–02. Evidence was presented at only two (2) of the scheduled hearings.[4] Orcutt again testified for POA at the July 18, 1994 hearing (R.R. 83a–94a) and was cross-examined by Township at the September 19, 1994 hearing.[5] (R.R. 110a–116a.)

Ronald Hoffman (Hoffman) also testified for POA at the July 18, 1994 hearing.[6] (R.R. 94a–96a.) POA, at that time, also presented Robert Gelman (Gelman), a real estate expert, who testified as to the use of the subject property.[7] (R.R. 97a–98a.) Neither Hoffman nor Gelman were cross-examined by Township. At the conclusion of the September 19, 1994 hearing, the ZHB stated "the hearing will be closed on September 29, 1994 when the briefs are in." (R.R. 121a.) On October 17, 1994, the ZHB met and voted to deny the variance requested by POA. (R.R. 122a.) On October 27, 1994, the ZHB at application No. 94–02 filed "Findings, Conclusions and Discussion Of Reasons Thereof"[8] (A–7 through A–11 of Brief For Appellant) in support of its decision of October 17, 1994 denying the application of POA for a use variance.

POA filed a timely appeal to the Court of Common Pleas of Allegheny County (trial court). The trial court, without taking any additional evidence,[9] by opinion and order

3. Four (4) of the five (5) scheduled hearings were continued without any evidence being presented; at the May 20, 1991 (the seventh (7th)) scheduled hearing, the ZHB, again without receiving any evidence, dismissed POA's application No. 90–09 without prejudice.

4. Two (2) of the four (4) scheduled hearings were continued without any evidence being presented.

5. At the request of POA, and with the approval of the ZHB, the evidence presented at the hearings on application No. 90–09 was incorporated into the record of application No. 94–02. (R.R. 93a.)

6. Hoffman was employed by POA from 1952 to approximately 1980, and thereafter for Martin. (R.R. 95a.)

7. Gelman expressed his opinion as to the use of the subject property as follows:

[U]nless the property can be accessed, it's virtually useless because it is land locked [sic]. By land locked [sic] meaning it has no frontage on any road, either public or private. I was aware of the prospective [sic] easement which has existed for many years, I believe almost forty years over the adjoining properties. I don't believe that any knowledgeable or even intelligent or informed buyer would be interested in purchasing a property which is abso-

lutely land locked [sic] because there'd [sic] just be no use to which that property could be put, unless of course it abuts a property contiguous with it. But because of its land locked [sic] nature because of the existence of the prospective [sic] easement, there was access to the property, limited but access to the property, I then thought what use could be made of this land with this limited prospective [sic] easement, and all I could come up with because of its location would be for advertising purposes.
(R.R. 98a.)

8. Although the ZHB set forth Procedural Findings numbered 1 through 6 and Substantive Findings number 7 through 22, and Conclusions of Law numbered 23 through 36, and a Decision numbered 37, the ZHB *did not* set forth a "Discussion of Reasons Thereof."

9. Where, as here, no additional evidence was presented subsequent to the Board's determination, our review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law in denying the use variance. *See Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). It is well established that a zoning hearing board abuses its discretion when its findings are not supported by substantial evidence. *Id.* at 555, 462 A.2d at 640.

dated August 21, 1995 reversed the decision of the ZHB "dated October 25 and October 27, 1994 denying a use variance for outdoor advertising on property owned by POA Company along State Route 60." Township timely appealed the August 21, 1995 trial court order. The majority reverses the trial court for the following reasons.

In the present case, POA's request for a variance was premised in part upon its contention that it had no other viable use of its land under the zoning ordinance. The *Township, however, presented sufficient credible evidence to establish that POA's land is suitable for the construction of an office building,* a use that would be permitted under the ordinance. To counter this evidence, POA attempted to show that it was experiencing a hardship because it did not have adequate vehicular access to its property to support the traffic that would be associated with an office building. POA offered into evidence a written agreement that was specifically prepared for its application for a variance and memorialized its easement over the Park Ridge property. The agreement limited POA's easement across the Park Ridge property to no more than three vehicles per month and solely for the purpose of maintaining POA's billboards. Prior to the execution of this agreement, however, there were no express limitations on POA's easement across the Park Ridge property, and therefore, there would have been no hardship that would have precluded POA from constructing an office building on its property.[5] As such, by entering into an agreement that specifically limited the use of its easement across Park Ridge's property, POA intentionally created the hardship that it now claims prevents it from complying with the zoning ordinance; that self-inflicted hardship cannot now provide a basis for granting a variance.[6] To allow otherwise would permit an owner of any landlocked property to execute an agreement limiting its easements across adjacent properties in order to avoid compliance with a zoning ordinance.[7] (Emphasis added.)

[5] The issue of whether the vehicular traffic associated with an office building would overburden POA's actual prescriptive easement across Park Ridge's property is a question of title restriction that cannot properly be addressed in zoning proceedings. See *Calvanese v. Zoning Board of Adjustment,* 51 Pa.Cmwlth. 152, 414 A.2d 406 (1980).

[6] It should also be noted that POA has made no attempt to gain access to its property by having the private road across the Park Ridge property declared a public road under the Private Roads Act. Act of June 13, 1836, P.L. 551, 36 P.S. §§ 2731–2738.

[7] Given our reversal of the trial court on this ground, we need not address the Township's other challenges to the trial court's decision.

The majority is in error in stating in its opinion in support of reversal that "[t]he Township, however, *presented sufficient credible evidence* to establish that POA's land is suitable for the construction of an office building, a use that would be permitted under the ordinance." Significantly, the majority neither identifies the witnesses whose testimony constituted "sufficient credible evidence"; nor does the majority set forth specifically, or in summary, what the "sufficient credible evidence" is.

The *only* testimony presented to the ZHB by Township was the opinion of Gold as to the use of the property, which the ZHB ignored, as demonstrated by the failure of the ZHB in any of the 37 paragraphs in support of its decision to mention Gold, his testimony or his opinion, or make any findings or conclusions based thereon. Neither the findings nor conclusion nor decision, being paragraphs 1 through 37, allude to or adopt in whole or in part Gold's opinion. At page three (3) of the majority's opinion, the majority states that Gold testified that POA's property was suitable for the development of an office building, which is true. The majority further notes that Gold also stated that the twenty-foot easement across Martin's land would be sufficient to support the traffic associated with such an office building, which is also true. What the majority neglects and overlooks is that to get to Martin's land from Aten Road one must first cross over Park Ridge's land. Gold conceded, on cross-examination, that he based his opinion on his

assumption that the twenty-foot easement over Martin's land extended all the way to Aten Road which it does not. (R.R. 29a–33a.)

Also, contrary to the majority's opinion, POA did assert a prescriptive easement over Park Ridge land between Aten Road and Martin's property (R.R. 24a, 30a–31a) at the January 21, 1991 hearing on application No. 90–09. At the hearing on July 18, 1994 on application No. 94–02, Orcutt and Hoffman both testified that since 1952 until the signs were removed from the condemned portion of the subject property, access to the subject property was from Aten Road across the property of Park Ridge on to Martin's property, then over Martin's property on to the subject property. (R.R. 89a, 96a.) The access was both by foot and by vehicle (R.R. 89a, 96a) at least two or three times a month, which occurred from 1952 to the condemnation by Department of the subject property on which billboards were erected. (R.R. 90a.) The record is clear, POA had no other use for the access over Park Ridge's property and Martin's property other than "maintaining, repairing, removing or replacing outdoor advertising devices", and there has been no use of the subject property since the signs were removed from the condemned portion of POA's property. (R.R. 93a.)

On October 15, 1991, POA and Park Ridge entered into an agreement wherein Park Ridge acknowledged the existence of a prescriptive easement over its land for "ingress, egress and regress by foot and vehicles to enter the land of Martin Media ... limited in intensity to no more than three instances of use per month by a single vehicle for erection and/or maintenance of outdoor advertising devices on POA's land...." (R.R. 63a.) Township, by its attorney, stated at the September 19, 1994 hearing on application No. 94–02 during the cross-examination of Orcutt:

I would point out to the Board and to the Solicitor, this document is captioned, Ease-

ment by Prescription; it doesn't grant an easement. It merely purports to acknowledge that such an easement exists.

(R.R. 115a.)

There is nothing in the evidence to support the majority's assertion "there were no express limitations on POA's easement across the Park Ridge property, ... [B]y entering into an agreement that specifically limited the use of its easement across Park Ridge's property, POA intentionally created the hardship that it now claims prevents it from complying with the zoning ordinance...."

In addition to the majority asserting and relying on facts not in the record, it is noted that in the record before the ZHB, the Township at no time raised the issue [10] that the agreement with Park Ridge was specifically entered into to intentionally create a hardship to prevent it from complying with the zoning ordinance.

For the foregoing reasons, I would affirm the order of the trial court.

---

10. Where, as here, an issue is cognizable in a proceeding and is not raised, it is waived and is not to be considered on appellate review. *Butler*

*Township Area Water and Sewer Authority v. Department of Environmental Resources,* 664 A.2d 185 (Pa.Cmwlth.Ct.1995).